THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| GINA PURVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-1350 |
| ) | |
| MICHAEL RIBAS, MARILYN RIBAS, ) | |
| and MICKEY RIBAS, ) | |
| ) | |
| Defendants. ) | |

### ORDER

This matter is before the Court on Defendants' Motion to Dismiss.  For the reasons stated herein, the Motion [#14] is GRANTED IN PART AND DENIED IN PART.

**Jurisdiction and Venue**

Plaintiff, Gina Purvis ("Purvis"), brings this action against her former student, Mickey Ribas ("Mickey"), and Mickey's parents, Michael and Marilyn Ribas (hereinafter referred to as "Mr. Ribas" and "Mrs. Ribas").  Mickey's cousin, Rick Lee Andes ("Andes"), was previously named as a Defendant but has since been dismissed.  The five-count complaint alleges intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, invasion of privacy, and conversion of personal property and identity.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as Purvis resides in Missouri, and the Ribases reside in Illinois.  Venue is proper as all alleged events occurred within the boundaries of this district.  28 U.S.C. § 1391(b).

Defendants have now moved to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The matter is fully briefed, and this Order follows.

**Factual Background**

Purvis was a tenured teacher at Hall High School in Spring Valley, Illinois.[1]  On November 10, 2004, Mickey "instigated the spread of false rumors" that he was having a sexual relationship with Purvis.  When confronted by school authorities, Mickey twice denied having a sexual relationship with Purvis.  However, after being assured that Purvis would not get in trouble and being threatened with expulsion or arrest if the rumors were not true, Mickey told authorities the sexual relationship did in fact exist.  School officials notified the Chief of Police, who then notified the Department of Children and Family Services.

On and after November 10, 2004, Purvis was investigated, arrested, and indicted for sexual assault against Mickey.  Purvis was suspended with pay pending the outcome of the criminal proceedings and subsequently dismissed from her position.  On October 31, 2005, at the conclusion of a six-day bench trial, Purvis was acquitted of all charges.

According to the Amended Complaint, Mickey had a troubled family life, and Purvis had reached out to him.  In Spring 2004, similar rumors of a sexual relationship had surfaced, and Mickey had denied them.  Prior to November 10, 2004, Mickey had found out that Purvis, her husband, and her toddler daughter were thinking about moving out of town.  He demanded to know if she was leaving and why she would abandon her students.  After being confronted and investigated by the authorities on November 10th, Mickey called Purvis to warn her about the

---

[1] Unless otherwise noted, the following factual allegations are taken from the Amended Complaint.

rumors and the investigation. When Purvis told Mickey that she would address the rumors when she returned to school, he told her that he hoped she went to jail.

Mickey told the Chief of Police that he had sex with Purvis for the first time on February 13, 2004, but on November 16, 2004, contradicted himself and stated that the first time he had sex with Purvis was the week after February 13, 2004. At trial, he gave yet another version of the story when he testified that the first sexual contact occurred sometime between February 9 and 13, 2004. Mickey stated that he had sex with Purvis at her home twice, once "prior to March 5, 2004, the second time a Saturday." Mr. Ribas testified that he dropped Mickey off at Purvis' home twice in late March 2004. Andes stated that he dropped Mickey off one of the two times and that the day was a Friday. Mickey also testified that on one of the nights it had poured rain, but meteorological reports show that no rain fell on any of the dates Mickey alleges the acts to have occurred.

Purvis points to other misrepresentations made by the Defendants. Mickey and his father "intentionally misrepresented" an incident after November 10, 2004, regarding a threatening phone call made by Mickey to Purvis and her husband. Mickey also changed some aspects of his video testimony regarding a statement he had previously made about ejaculating nine times one night at Purvis' home. The alteration in his testimony and some other added details to his story of the events that took place at Purvis' home were apparently due to coaching by the Chief of Police. Furthermore, Mickey answered "I don't recall" over fifty times at trial. Purvis states that Mickey and Rick made false and defamatory statements and that Mickey continues to do so in internet communications.

Mickey created a videotape at the Ribas residence that included himself and other Hall High School males "engaging in acts of excessive alcohol consumption, purging, urination, exposing of the male penis and genitalia, and/or masturbation." The students on the tape voiced concern about the consequences if Purvis found out about the tape. Mickey mailed this tape to Purvis' out of state teenage niece "during the relevant period."

Using the Ribas family computer, Mickey stole her internet identity. In an instant message conversation with Purvis's mother, Mickey posed as Purvis to learn "intimate details of Plaintiff's personal life," which he later used to suggest an intimate relationship to the Chief. Mickey also tried to insinuate an intimate relationship with Purvis when he told the Chief that he had received a gold chain from Plaintiff as a gift. However, the chain was actually given to him by his mother.

On February 4, 2005, the Ribas family computer was subpoenaed by Purvis' criminal defense attorney. The Illinois State Police conducted a forensic exam of the computer after February 2005 and found that over 16,000 files had been deleted on or after November 10, 2004, including some deletions after the subpoena was served on February 4, 2005. Mrs. Ribas told the Chief that the hard drive had been repaired and replaced in December 2004, but Purvis' attorney was not informed of this.

Plaintiff also alleges that Mickey stole, and continues to possess at his parents' home, Purvis' personal property from her classroom, including family photographs and a ring. Purvis was suspended without pay before her criminal trial and before her administrative dismissal hearing concluded. Purvis alleges that she suffered and will continue to suffer damage

"including pain and suffering, extreme and severe mental anguish and emotional distress, and damage to her professional and personal reputation."

## Motion to Dismiss

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. Bontkowski v. First Nat. Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993), *cert. denied*, 114 S.Ct. 602 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the Complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiffs to relief. Chaney v. Suburban Bus Div., 52 F.3d 623, 627 (7th Cir. 1995); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 432 (7th Cir. 1993).

### Count I - Intentional Infliction of Emotional Distress

Purvis alleges intentional infliction of emotional distress against Mickey and his parents. In order to state a claim for IIED, the plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. Graham v. Commonwealth Edison Co. 318 Ill.App.3d 736, 745, 742 N.E.2d 858, 866 (1st Dist. 2000). A defendant will only be held liable for conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Public Finance Corp. v Davis, 66 Ill.2d 85, 90, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts §46, Comment *d* (1965)). To be actionable, "the distress suffered must be such that no reasonable person could be expected to

endure it." Harris v. First Fed. Sav. & Loan Ass'n of Chicago, 129 Ill.App.3d 978, 981, 473 N.E.2d 457 (1st Dist. 1984).

Under the liberal pleading requirements of Rule 8, the Court finds that Purvis has stated a claim for IIED that is sufficient to survive a motion to dismiss. She has explained the conduct of the Defendants, including everything from lying to authorities to threatening phone calls. She has described the involvement of the Defendants in the incidents and has alleged suffering from severe emotional distress. While Defendants suggest that Purvis cannot prove many of her allegations, this is a motion to dismiss. She does not have to prove any element of her claims at this stage of the litigation. Rather, she need only include allegations from which it is possible that a she could establish any set of consistent facts that could entitle her to relief.

As Purvis has successfully alleged facts showing that Defendants' conduct was arguably extreme and outrageous, that Defendants intended to cause emotional distress or knew emotional distress would result, and that Plaintiff suffered severe emotional distress, she has met her burden. As her IIED claim is sufficient to entitle Purvis to proceed to discovery, Defendants' Motion to Dismiss as it pertains to this claim is denied.

### Count II  - Negligent Infliction of Emotional Distress

Purvis next alleges negligent infliction of emotional distress by Mickey, Mr. Ribas, and Mrs. Ribas. To succeed on this claim, she must show that the defendants owed her a duty, that they breached this duty, and that this breach proximately caused her injury. Schrott v. Bristol-Myers Squibb Co., 403 F.3d 940, 944 (7th Cir. 2005), *citing* Parks v. Kownacki, 193 Ill.2d 154, 737 N.E.2d 287, 296-97 (Ill. 2000); Corgan v. Muehling, 143 Ill.2d 296, 574 N.E.2d 602, 606-07 (Ill.1991).

Under Illinois law, courts historically limited recovery for NIED to situations where the plaintiff suffered contemporaneous physical impact and alleged bodily injury as a result of the defendant's negligence.  Allen v. Otis Elevator Co., 206 Ill.App.3d 173, 177, 563 N.E.2d 826, 829 (1st Dist. 1990) (citing Rosenberg v. Packerland Packing Co., Inc., 55 Ill.App.3d 959, 962 (1st Dist. 1977)).  This requirement became unclear in the wake of Corgan, where the Illinois Supreme Court suggested that direct victims claiming NIED did not have to allege a contemporaneous physical injury or impact in order to state a claim.  574 N.E.2d 604-09.  However, the court did not explicitly address whether the so-called "impact rule" was still in force for direct victims.

In Pasquale v. Speed Prod. Eng'g, 166 Ill.2d. 337, 654 N.E.2d 1365, 1371 (Ill. 1995), the Illinois Supreme Court again addressed this issue.  In *dicta*, the court noted that the decision in Corgan "eliminated the contemporaneous injury or impact requirement for a direct victim's recovery for emotional distress on a theory of negligence."   This prompted some disagreement as to whether the Illinois Supreme Court was referring to the elimination of a plaintiff's obligation to allege a physical manifestation of the emotional distress or a physical impact or injury initially.  Schwartz v. National Van Lines, Inc., 375 F.Supp. 2d 690, 700-1 (N.D.Ill. 2005) (comparing Chen v. Mayflower Transit, Inc., No. 99 C 6261, 2002 WL 1632412 at *11 (N.D.Ill. July 22, 2002) and Kur v. Fox Valley Press, No. 96 C 3695, 1997 WL 89140 at *5 (N.D.Ill. Feb. 21, 1997)).

Federal courts interpreting Illinois law have resolved any disagreement in favor of continuing to apply the impact rule.  In Kapoulas v. Williams Ins. Agency, Inc., 11 F.3d 1380, 1382 (7th Cir. 1993), the Seventh Circuit interpreted Corgan as leaving the impact rule intact with

respect to direct victims.  *See also,* Fenner v. Favorite Brands International, Inc., 1998 WL 249232, at *7 (N.D.Ill. May 12, 1998) (characterizing Pasquale's interpretation of Corgan as inaccurate and finding that Corgan stands for the proposition that a direct victim need not allege a "physical injury or illness as a result of the emotional distress" and not that the victim need not allege a physical impact or injury in the first place); Choi v. Chase Manhattan Mortgage Co., 63 F.Supp.2d 874, 887 (N.D.Ill. 1999).  The Seventh Circuit reaffirmed its position on this issue when it affirmed the dismissal of a plaintiff's NIED claim for not alleging a physical impact or injury initially in Cleveland v. Rotman, 297 F.3d. 569, 574 (7th Cir. 2002).  Specifically, the Seventh Circuit held that "Illinois follows the 'impact rule,' which allows a plaintiff to recover for negligent infliction of emotional distress only if the distress is directly and causally related to a physical injury."  Id., *citing* In re Aircrash Disaster Near Roselawn, Inc. On Oct. 31, 1994, 948 F.Supp. 747, 750 (N.D.Ill. 1996); Allen, 206 Ill.App.3d at 178; Braun v. Craven, 175 Ill. 401, 420 (1898).  Otherwise, the scope of recovery for NIED would be the same as recovery for simple negligence itself, and "[t]he Illinois Supreme Court clearly did not intend that situation." Fenner, 1998 WL 249232, at *8, *citing* Brogan v. Mitchell International, Inc., 181 Ill.2d 178, 692 N.E.2d 276, 278 (Ill. 1998).

     Here, Purvis does not allege that Defendants' negligence involved a physical impact or injury that directly caused her emotional distress.  Although Defendants may have caused harm to Purvis, the harm alleged in the Amended Complaint does not appear to involve the impact required by Illinois law.  Accordingly, Defendants' Motion to Dismiss her NIED claim for failure to state a claim will be granted.  Purvis is, however, given leave to file an amended

complaint that sufficiently alleges the necessary physical impact within 14 days of the entry of this Order if she has a good faith basis for doing so.

Count III - Defamation

In Count III, Purvis contends that Mickey defamed her. In order to state a defamation claim, the plaintiff must show that the defendant made a false statement concerning the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by the defendant, and that the plaintiff was damaged. Cianci v. Pettibone Corp., 298 Ill.App.3d 419, 424, 698 N.E.2d 674 (1st Dist. 1998). Certain categories of defamation are considered defamatory *per se* and fall into one of four categories: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office of employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business. Wynne v. Loyola Univ. of Chicago, 318 App.Ill.3d 443, 451, 741 N.E.2d 669, 675 (1st Dist. 2000).

Defendants argue that Purvis has failed to plead Count III with the specificity required in a defamation claim. Purvis alleges that Mickey made statements that impute the commission of a criminal offense, as well as the fact that his statements actually led to her arrest, indictment, and criminal trial. She also includes allegations regarding the false nature of the statements made and indicates that such statements were made to private persons both during and after the police investigation. That being said, despite the notice pleading approach that generally applies to federal lawsuits, Purvis has not satisfied the requirement of Illinois substantive law that she *specifically* identify the words said to be defamatory and hence actionable. Morris v. Household

Mortgage Services, Inc., 350 F.Supp.2d 786, 788 (N.D. Ill. 2004); Derson Group, Ltd. v. Right Management Consultants, Inc., 683 F.Supp. 1224, 1229 (N.D.Ill. 1988).

While Purvis has made allegations that could support a claim for defamation per se, the Court finds that additional specificity is required in order to allow Defendants to frame an appropriate responsive pleading in accordance with Illinois law.  Accordingly, the Court grants Defendants' Motion to Dismiss Count III in that the Court directs Purvis to amend her pleading to include the requisite specificity within 14 days.

### Count IV - Invasion of Privacy

Purvis alleges that Mickey and his parents invaded her privacy.  In Leopold v. Levin, 45 Ill. 434, 259 N.E.2d 250 (Ill. 1970), the Illinois Supreme Court recognized a cause of action for invasion of privacy.  Illinois also follows the Restatement (Second) of Torts which divides "invasion of privacy" into four categories: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) publicity which unreasonably places another in a false light before the public.  Midwest Glass Co. v. Stanford Development Co., 339 N.E.2d 274, 277 (1st Dist. 1975); Kelly v. Franco, 391 N.E.2d 54, 57 (1st Dist. 1979).

Here, Purvis alleges that she suffered an unreasonable intrusion upon her seclusion when Mickey used the Ribas family's computer to pose as Purvis in an internet conversation with her mother.  The elements of this tort are: (1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly unauthorized intrusion or prying into the plaintiff's seclusion; (3) the intrusion would be highly offensive or objectionable to a reasonable person; (4) the intrusion caused the plaintiff anguish and suffering.  Busse v.

Motorola, Inc., 351 Ill.App.3d. 67, 813 N.E.2d 1013, 1017 (1st Dist. 2004), *citing* Schmidt v. Ameritech Illinois, 329 Ill.App.3d 1020, 1027-31 (1st Dist. 2000).

Defendants suggest that Purvis has failed to sufficiently allege an invasion of privacy. However, the Amended Complaint does provide facts that, if proven, could possibly entitle her to relief against Mickey. Mickey allegedly used Purvis' identity to speak to her mother online in an instant message conversation, which requires the use of a username and password in order to protect the privacy of the user. After assuming her identity, he allegedly intruded "into details of Plaintiff's private and personal life" and spoke to her mother about personal subjects. In Busse, the court recognized that the gathering of personal information, such as family problems, romantic interests, health problems, etc., may be an actionable intrusion. 813 N.E.2d at 1017-18. That being said, it is apparent that the inquiry requires a factual analysis that is not appropriate in the context of a motion to dismiss.

Accordingly, Defendants' Motion to Dismiss her invasion of privacy claim is denied with respect to her claim against Mickey. The Court notes, however, that the above referenced allegations implicate Mickey, but not Mr. or Mrs. Ribas. Thus, the Court cannot find that sufficient allegations have been made to promote a reasonable inference that she could be entitled to relief with respect to her claim against Mr. and Mrs. Ribas. Defendants' Motion to Dismiss is therefore granted with respect to her claim against Mr. Ribas and Mrs. Ribas, but Purvis is given 14 days to file an amended pleading containing sufficient allegations against them if she is able to do so in good faith.

The Court also notes that Defendants request the dismissal of Count IV for failure to satisfy the amount in controversy in the event that Counts I, II, and III are dismissed. As Count I

has not been dismissed, and Purvis has been given leave to file an amended complaint with respect to Counts II and III, this portion of their Motion to Dismiss is denied.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss [#14] is GRANTED IN PART and DENIED IN PART. Purvis is given leave to file an amended complaint curing the identified deficiencies within 14 days.

ENTERED this 10th day of August, 2006.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge