UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| GINA PURVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-1350 |
| | ) |
| MICHAEL RIBAS, Marylynn RIBAS, and | ) |
| MICKEY RIBAS, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is a Motion for Summary Judgment by Defendant, Mickey Ribas.  For the reasons set forth below, the Defendants' Motion for Summary Judgment [#73] is DENIED.

**JURISDICTION**

This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship, and the matter in controversy exceeds $75,000.00.

**BACKGROUND**

As the Court has previously stated on more than one occasion, this litigation arises out of an unfortunate series of events.  The Plaintiff, Gina Purvis ("Purvis"), was a tenured Biology teacher at Hall High School ("Hall") in Spring Valley, Illinois.  The tale begins back in the Spring of 2004 when Purvis and Mickey Ribas ("Mickey"), who was then her 15-year-old student, became the subject of rumors that there was a sexual relationship between them.  When questioned by Hall Principal Patricia Lunn ("Lunn"), both Purvis and Mickey denied the rumors.

As the rumors continued into the Fall, Lunn and Daniel Oest ("Oest"), Hall's Superintendent, determined that Oest and Gary Vicini ("Vicini"), Hall's Dean of Students and head football and track coach, should investigate. This would sound like a good plan, except for the fact that Oest was not informed that Purvis had previously reported Vicini to Lunn for his alleged sexual harassment of a female student the year before. From this, it would not be difficult to infer that Vicini may not have been the most objective investigator for this particular assignment.

On November 10, 2004, Oest and Vicini met with Mickey. Mickey denied any sexual relationship with Purvis. During the criminal trial, Mickey testified that in response to his denials on November 10, 2004, Vicini told him that he would be in trouble if he didn't say the story was true and threatened him with expulsion or jail if he persisted in denying the existence of a sexual relationship with Purvis. Mickey changed his story and told them that he had sex with Purvis on several occasions. Oest then called Chief Douglas Bernabei ("Bernabei") of the Spring Valley Police Department to report the allegations of sexual abuse against Purvis. Bernabei met with Mickey that afternoon and notified DCFS of the allegations of sexual abuse.

Beginning on November 10, 2004, Purvis was investigated for sexual assault against Mickey. She was indicted by a grand jury and arrested on December 15, 2004. After initially being suspended by the School Board with pay pending the outcome of the criminal proceedings, Purvis was subsequently terminated. On December 20, 2005, Purvis and the school district reached a settlement whereby she agreed to voluntarily resign her employment in exchange for the sum of $43,000. On October 31, 2005, at the conclusion of a six-day bench trial, Purvis was acquitted of all charges.

Purvis brings this suit against Mickey, as well as his parents, Michael and Marylynn Ribas, alleging: (1) a claim of intentional infliction of emotional distress against Mickey and his parents; (2) a claim of defamation *per se* against Mickey; and (3) a claim of invasion of privacy against Mickey. Summary judgment was previously granted in favor of Michael and Marylynn Ribas. Mickey has now moved for partial summary judgment on the intentional infliction of emotional distress claim asserted against him. The Court concludes that full briefing is not required on the matter, as the principles of law are well-established, and the essential facts involved in this motion are essentially undisputed. This Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure

56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

In order to state a claim for IIED, the plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. Graham v. Commonwealth Edison Co. 318 Ill.App.3d 736, 745, 742 N.E.2d 858, 866 (1st Dist. 2000); Lewis v. School District #70, 523 F.3d 730, 746 (7th Cir. 2008). To be actionable, "the distress suffered must be such that no reasonable person could be expected to endure it." Harris v. First Fed. Sav. & Loan Ass'n of Chicago, 129 Ill.App.3d 978, 981, 473 N.E.2d 457 (1st Dist. 1984). The tort does not extend relief for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Lewis, 523 F.3d at 746-47, *citing* McGrath v. Fahey, 126 Ill.2d 78 (1988). Mickey's sole argument is that Purvis had not provided evidence from which a reasonable jury could conclude that she suffered from severe emotional distress.

Although medical evidence is not required to prove severe emotional distress, Purvis has medical evidence and a physical reaction. Purvis saw her family doctor twice within a six-month period following Mickey's allegations of abuse. She testified in her deposition, "I couldn't

sleep, I was – the things that were physically and emotionally happening because of the case." (Purvis Dep. at 660) Prior to Mickey's allegations, she had not had trouble sleeping. Id., at 661. She is contemplating seeing a psychiatrist to help her deal with the emotional stress on her life that has resulted. Purvis described this as:

> The continued stress, the continued disappointment. Your family doesn't have enough money. I can't teach any more because of what the kids accused me of doing. You know, my daughter is getting older and starting to understand stuff. I'm at a new job. They know I have taught in the past. Well, why in the heck would you want to work at a bank instead of going to teach, trying to come up with ways to explain things without – you know, stuff like that. The emotional stress that every time I have to come up here for a deposition, it puts more stress on my marriage. My family, my kids have to be away from me.

Id., at 662. Her doctor prescribed Paxil and another medication to calm her nerves, help her sleep, and help her breathing. Thus, she has demonstrated physical manifestations of emotional distress in the form of insomnia and difficulty breathing, as well as ongoing emotional distress that continues today, more than four years after Mickey first made his allegations against her.

In another context, the evidence of Purvis' emotional distress might fall closer to the line of being non-actionable. However, the outrageousness of the conduct alleged in this case is so extreme that it essentially constitutes "evidence that the distress has existed." Bristow v. Drake Street Inc., 41 F.3d 345, 350 (7th Cir. 1995), *citing* Khan v. American Airlines, 266 Ill.App.3d 726 (1st Dist. 1994) and Restatement (Second) of Torts § 46, comment j. If Purvis' allegations are believed by the jury, she was falsely accused of having sex with a student, arrested, criminally prosecuted, removed from her teaching position, indicated as having sexually abused a minor with DCFS, and continues to be barred from pursuing employment in her chosen profession all because Mickey was angry with her for distancing herself from him and moving to

Missouri with her family. The Court cannot conclude that no reasonable jury could find that Mickey's conduct went beyond all possible bounds of decency. The jury could also find that Purvis has suffered and continues to suffer severe emotional distress and that no reasonable person should be expected to endure what she has endured. Mickey's Motion for Summary Judgment must therefore be denied.

## CONCLUSION

For the above reasons, Mickey's Motion for Summary Judgment [#73] is DENIED. This matter remains set for final pretrial conference on February 18, 2009, with jury trial to follow on March 30, 2009.

ENTERED this 12th day of February, 2009.

                                                s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge

.